Mr. Donald J. Lunny City Attorney City of Plantation 400 N.W. 73 Avenue Plantation, Florida 33317
Dear Mr. Lunny:
This is in response to your request for an opinion on substantially the following questions:
 (1) DOES A VIOLATION OF THE GOVERNMENT IN THE SUNSHINE LAW OCCUR WHEN TWO MEMBERS OF THE CITY COUNCIL PARTICIPATE IN A BOARD OF TRUSTEES MEETING OF A NONPROFIT CORPORATION TO CONSIDER SITE PREFERENCES TO BE ADVOCATED BEFORE THE CITY COUNCIL?
 (2) MAY A SINGLE MEMBER OF THE BOARD OF TRUSTEES WHO IS ALSO A CITY COUNCIL MEMBER PETITION THE MAYOR FOR CORRECTIVE OR REMEDIAL WORK TO BE DONE RELATING TO A BEAUTIFICATION PROJECT WITHOUT VIOLATING THE GOVERNMENT IN THE SUNSHINE LAW?
 QUESTION ONE
According to your letter, two members of the City Council of the City of Plantation presently sit on the Board of Trustees of the Plantation Cultural Arts Board, Inc., a not for profit Florida corporation consisting of Plantation residents who are interested in developing a cultural arts facility within the city. You state that the City of Plantation exercises no control over the membership of the nonprofit corporation; however, one city council member who sits on the board of trustees has `volunteered, with the consent of the City Council, to more or less act as a liaison between the not for profit corporation and the City Council' and recently a second member of the corporation's board of trustees was elected to a vacant seat on the city council. You therefore inquire whether meetings of the board of trustees of the nonprofit corporation in which two members of the city council participate to discuss matters which will be brought before the city council are subject to s 286.011, F.S.
The Government in the Sunshine Law, s 286.011, F.S., provides in pertinent part:
 All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . . (e.s.)
The courts have interpreted the foregoing language to extend to all deliberations and discussions of a public board or commission; thus s 286.011 is applicable to any gathering where members of the board or commission deal with some matter upon which foreseeable action will be taken by the board. See, Board of Public Instruction of Broward County v. Doran, 224 So.2d 693, 699 (Fla. 1969), in which the court recognized the right of the public to be present and heard during all phases of enactments by public boards and commission. And see, Times Publishing Co. v. Williams,222 So.2d 470, 473 (2 D.C.A. Fla., 1969), stating:
 Every thought, as well as every affirmative act, of a public official as it relates to and is within the scope of his official duties, is a matter of public concern; and it is the entire decision-making process that the legislature intended to affect by the enactment of the statute before us. . . . Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action. It follows that each such step constitutes an `official act,' an indispensable requisite to `formal action,' within the meaning of the act.
As the court stated in Hough v. Stembridge, 278 So.2d 288, 289 (3 D.C.A. Fla., 1973), `[i]n order for there to be a violation of F.S. s 286.011, F.S.A., a meeting between two or more public officials must take place which is violative of the statute's spirit, intent, and purpose. The obvious intent of the Government in the Sunshine Law, supra, was to cover any gathering of some of the members of a public board where those members discuss some matters on which foreseeable action may be taken by the board.'
Thus, if two or more members of a public board or commission meet to discuss some matter which will in the foreseeable future be brought before the board for appropriate action, such meeting should be conducted in the Sunshine. This is not to say that two or more members of a public body may not meet at a social gathering or private club, only that such public officials should avoid discussing matters on which foreseeable action will be taken by the public board of which they are members. Cf., Inf. Op. to Glen Darty, dated March 24, 1974, wherein this office stated that a gathering of county and city commissioners and legislators at a private fishing camp hosted by the Florida Power Corporation was not a `meeting' within the purview of the Sunshine Law unless two or more members of the board represented at such meeting discussed matters on which foreseeable action would be taken by such board. And see, Inf. Op. to Frank Kreidler, dated August 3, 1981.
Moreover, if there is a question as to whether a meeting is subject to the Government in the Sunshine Law, it is advisable to comply with the requirements of the statute. See, City of Miami Beach v. Berns, 245 So.2d 38, 41 (Fla. 1971), wherein the Florida Supreme Court stated `[i]f a public official is unable to know whether by any convening of two or more officials he is violating the law, he should leave the meething forthwith.' And see, Town of Palm Beach v. Gradison, 296 So.2d 473, 477 (Fla. 1974), stating that `[t]he principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State.' Thus if two or more members of a public board or commission meet at any gathering and discuss some matter on which foreseeable action will be taken by the public board or commission, the requirements of the Government in the Sunshine Law must be meet.
Therefore, while s 286.011 does not preclude the two city council members from serving on the board of trustees of the nonprofit corporation, in those instances when the board of trustees discuss matters which will be brought before the city council for appropriate action by that body, I would recommend that the city council members sitting on the board of trustees either excuse themselves from such board meetings or conduct such meetings in accordance with the requirements of the Government in the Sunshine Law.
You also inquire as to a possible conflict of interest arising under the foregoing factual circumstances. Any question as to the existence of a possible conflict of interest within the meaning of the Code of Ethics for Public Officers and Employees, Part III of Ch. 112, F.S., is within the jurisdiction of, and should be referred to, the Florida Commission on Ethics,
In passing I would also note that you state that one of the members of the city council had been designated by the city council to act as liaison between the nonprofit corporation and the city council. While generally the presence of two or more members of the public body is required in order for the Government in the Sunshine Law to be applicable, certain factual circumstances have arisen where in order to assure public access to the decision making process of public boards or commissions, the presence of two individuals is not always necessary in order for a violation of s 286.011 to occur. Cf., Town of Palm Beach v. Gradison, supra at 477, stating that the statute should be construed so as to frustrate all evasive devices. If the council has delegated its authority to act on its behalf to the individual council member, then the requirements of s 286.011 may still be applicable to the discussions of the individual city council member with the nonprofit corporation. See, AGO 74-294 wherein this office stated that s 286.011 was applicable to a single member of a board or commission to whom the authority to act on behalf of the board in matters such as the lease of land, etc., had been delegated and thus such member was prohibited from secretly negotiating any such lease. But see, Florida S.T.O.P., Inc. v. Goodrum, Case No. 80-3775 (10th Cir. Polk Co., 1980), aff'd, 415 So.2d 1372 (2 D.C.A. Fla., 1982), in which the district court upheld a circuit court decision that s 286.011 was not applicable to a single member of a housing authority appointed to gather information about sites for the authority.
QUESTION TWO
Your second inquiry concerns a situation whereby a single council member `petitions' the mayor for certain corrective or remedial work to be done on a beautification project. In subsequent conversations with your office, this office has been informed that the mayor has no authority to vote on any ordinance or resolution of the city council except in the case of a tie. It was not, however, clear from such conversations whether the decision to authorize such work is one which the Mayor as the chief executive of the city may make or whether such a decision must be made by the city council. If action by the city council is required, I am of the view that since the mayor is authorized to vote in the event of a tie, discussions between the mayor and a city council member on such a matter which will come before the entire board and may possibly involve him directly through his power to break ties must be conducted in the sunshine. Cf., Hough v. Stembridge, supra. See, AGO 75-210 wherein this office stated that since the mayor of the City of Lauderhill had a voice in city decision making through the power to break tie votes, the mayor should not confer privately with members of the city council regarding matters of pending business if such matters will come before the city council for consideration and could require the mayor to exercise his power to break tie votes. If, however, the decision to authorize corrective or remedial work on a beautification project falls within the administrative functions of the mayor and would not come before the council for consideration and further action, it does not appear that such discussions between the individual city council member and the mayor would be subject to the requirements of s 286.011.
In sum, I am therefore of the opinion, until legislatively or judicially determined otherwise, that
 (1) While s 286.011, F.S., does not preclude two city council members from serving together on a board of trustees of a nonprofit corporation, in those instances when the board of trustees will be discussing some matter which will be brought before the city council for action the city council members should either excuse themselves from such meetings of the board or hold the board meetings in the sunshine.
 (2) If the decision to authorize corrective or remedial work on a beautification project falls within the administrative functions of the mayor and would not come before the city council for consideration and further action, discussions between an individual member of the city council and the mayor would not be subject to the Government in the Sunshine Law; if, however, the decision to authorize such work could come before the city council for consideration and could require the mayor to exercise his power to break tie votes, the mayor should not confer privately with a member of the city council regarding such matters.
Sincerely
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General